ROBERT K. ELI, Petitioner-Appellant, *v.* STATE OF HAWAII, ANTONE OLIM, WARDEN, HAWAII STATE PRISON, Respondents-Appellees

NO. 7368

S. P. NO. 4415

JUNE 22, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

*Per Curiam.* Seeking post-conviction relief[1] under Rule 40, Hawaii Rules of Penal Procedure, appellant-petitioner Robert K. Eli, an inmate of the Hawaii State Prison, petitioned the circuit court in July 1977 for discharge from his sentence of imprisonment of 50 years[2] meted to him in April 1972 as a result of his plea of guilty to a charge of murder in the second degree. The petition was denied by the lower court, which ruled that petitioner's plea of guilty was knowingly, intentionally and voluntarily made and that petitioner was neither denied effective assistance of counsel nor substantial rights of due process. The order of the court was then appealed to this

---

[1] Appellant's petition was actually labeled as a petition for habeas corpus.

[2] Appellant was serving time as a federal prisoner at the time of his sentence. The 50-year sentence was to run concurrently with his federal sentence of 12 years.

court and from which we took jurisdiction. We see no reason to disturb the order of the lower court. We affirm.

## I.

Petitioner was originally charged by the State with the crime of murder in the first degree in Criminal No. 42884. During the course of his trial before Judge Lanham, a mistrial was declared. Before the retrial commenced, petitioner's attorney, Mr. David Schutter, filed a motion to dismiss on the ground that a retrial would violate petitioner's constitutional right against double jeopardy. This motion was denied by the court.

In March 1972, Attorney Schutter prepared and presented to the Hawaii Supreme Court a petition for writ of prohibition seeking to prevent the retrial of petitioner for the murder charge on the ground of double jeopardy. At that time, the practice of the Supreme Court was not to file-stamp a petition for writ of prohibition upon receipt.[3] The petition would be circulated among the justices, who would later hold a conference to discuss the petition. If the justices or any one of them decided to issue an order to show cause, the petition would then be filed. Otherwise, the unfiled petition would be returned.

The Hawaii Supreme Court considered the petition and decided against an order to show cause. The petition was thereupon returned to Attorney Schutter without being file-stamped.

Attorney Schutter advised petitioner of the action taken by the Supreme Court. He further advised petitioner that, in his judgment, it was unlikely that petitioner would ever receive a favorable decision upon his double jeopardy claim before the Supreme Court (in the event there was to be an appeal on a judgment of guilt), and that it would be in petitioner's best interests to plead guilty to a lesser-included offense, thereby reducing the maximum term of imprisonment petitioner would face. Attorney Schutter also advised petitioner that it was possible that petitioner would receive an even shorter term of imprisonment by the sentencing judge.[4]

---

[3] This practice was subsequently changed by Rule 23, Rules of the Supreme Court, in July 1972.

[4] Attorney Schutter was to testify later that he was surprised at the sentence received by appellant.

 

To a reduced charge of murder in the second degree, petitioner entered a plea of guilty before Judge Lanham. Petitioner did so because he believed that it was "the best thing to do" in light of the fact that his potential term of imprisonment would likely be less than if he were convicted of murder in the first degree.

## II.

Petitioner contends that the lower court erred in denying post-conviction relief because after the Hawaii Supreme Court returned his petition for a writ of prohibition, his counsel had failed to inform him of his right to appeal by way of a habeas corpus petition to the federal court for review of the double jeopardy question. Implicit in his argument is his contention that he was unable to make a knowing and willing guilty plea because he had no knowledge that he had the right to petition the federal court for review; he also thought that the double jeopardy issue had been appealed to the Hawaii Supreme Court and believed his appeal had been lost on the merit; on account of his mistaken belief he was strongly influenced by his counsel to plea bargain. He further contends his plea was involuntary in that he was denied effective assistance of counsel because his attorney failed to advise him that he had a right to appeal to the federal court.

## III.

In a petition seeking relief under Rule 40 on ground that the guilty plea was entered into involuntarily, the court is required to look at the entire record in order to determine whether the petitioner's claims or recantation are credible and worthy of belief. The record is vital to the ultimate determination of whether the plea was made voluntarily; as this court has repeatedly emphasized, it will not presume from a silent record a waiver of a constitutional right. *Medeiros v. State,* 63 Haw. 162, 623 P.2d 86 (1981); *Mara v. Naauao,* 51 Haw. 322, 459 P.2d 382 (1969). A silent record or a minimal record places the burden on the State to prove waiver. *Medeiros, supra.* In the absence of a silent or minimal record, the burden is on petitioner to prove by a preponderance of the evidence that his constitutional right was not voluntarily and intelligently waived. *Id.*

In view of these pronouncements, we take little comfort in the fact that in the instant case the circuit court was not furnished the verbatim record of the proceeding in which petitioner entered his guilty plea before Judge Lanham. For reasons unknown to this court, the verbatim record was never submitted in evidence or called to the court's attention during the Rule 40 proceedings.

It was the practice in 1972 for all acceptances of guilty pleas in the circuit court to be recorded and transcribed by the court reporter and to have the verbatim record filed with the court as a precaution against those who may wish to vitiate their guilty pleas at a later date.

Ordinarily, matters not presented to the trial court may not be considered by the appellate court on appeal. *Orso v. City and County,* 55 Haw. 37, 514 P.2d 859 (1973). Where the equity of the situation dictates, we will use our discretion to take judicial notice of matters of which courts may properly take judicial notice but which are not part of the record on appeal. *See McAulton v. Smart,* 54 Haw. 488, 510 P.2d 93 (1973). It has been held that an appellate court may, in its discretion, take judicial notice of the files or records of a case on appeal. *State ex rel. Hernandez v. McConahey,* 42 Wis.2d 468, 167 N.W.2d 412 (1969).

We will take judicial notice of the verbatim record. The record discloses that at the time the petitioner entered his plea of guilty before Judge Lanham, a plea bargain was agreed to between petitioner and the State. Essentially, petitioner agreed to plead to a reduced charge, and the government agreed to three stipulations. The government agreed: (1) to recommend a concurrent sentence to the federal sentence of the 12 years appellant was serving, (2) not to request that the court impose a specific sentence, and (3) not to request the adult probation division to recommend a specific term of imprisonment. In retrospect, the plea bargain was not violated.

The verbatim record establishes that Judge Lanham was particularly careful in his examination of petitioner to show that petitioner was making his plea voluntarily and intelligently. We set out in the appendix the pertinent portions of such record.

In *Brady v. United States,* 397 U.S. 742 (1970), the United States Supreme Court defined the standard as to voluntariness of guilty pleas:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to

him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Id.* at 755.

The voluntariness of petitioner's guilty plea was not distorted because his attorney had failed to inform him of his right to petition the federal court for review or because he mistakenly believed that his appeal to the Hawaii Supreme Court on the issue of double jeopardy had been lost on the merit. Petitioner was represented by competent counsel. The effectiveness of counsel's assistance does not mean counsel must assert every novel, albeit plausible, legal theory in defense of appellant, *Stough v. State,* 62 Haw. 620, 618 P.2d 301 (1980), or pursue every legal remedy. We do not deem the action of petitioner's counsel to be below the level of ordinary competence demanded of lawyers in criminal cases. *Id.*

We conclude from the record that there was a factual basis to petitioner's guilty plea. Petitioner's plea of guilty stemmed from his realization that there was a strong possibility that he would be convicted of the charge of murder in the first degree, and a conviction would subject him to a sentence of life imprisonment without parole. He was influenced by his attorney to plead guilty to the lesser charge, which would leave him with a chance for parole. He was also advised by his attorney that there was a possibility that he would receive a shorter term of imprisonment. These were the only reasons which compelled petitioner to plead guilty to the charge of murder in the second degree. The fact that he expected and did not receive a light sentence, or that his counsel made an erroneous prediction of his sentence, does not render the guilty plea involuntary. *Masciola v. United States,* 469 F.2d 1057 (3rd Cir. 1972).

Based upon the record, we hold that petitioner's plea of guilty was entered voluntarily.

We consider the other issues on appeal to be without merit. We affirm the order of the lower court.

*Jacquelyn desMarets, Steve K. Miyasaka,* Deputy Public Defenders, on the briefs for petitioner-appellant.

*George H. Yamamoto,* Deputy Attorney General, on the brief for respondents-appellees.

## APPENDIX

THE COURT: Well, the first thing is, defendant wishes to withdraw his plea of not guilty heretofore entered.

Is that your desire in this case, Mr. Eli?

THE DEFENDANT: Yes, sir.

THE COURT: And this is with the intention to plead guilty to the lesser-included offense of Murder in the Second Degree. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Very well, the plea of not guilty heretofore entered by the defendant may be withdrawn.

Now, before we ask you to plead to the lesser-included offense, you understand that by pleading guilty, this is the biggest form of self-incrimination there is under the law. You understand that, because if you plead guilty, the Court would just proceed to adjudge you to be guilty if the Court accepts your guilty plea, and it will just be a matter of sentencing you. There won't be any trial, you understand that?

THE DEFENDANT: Yes.

THE COURT: And a plea of guilty is just like a confession, so I want to advise you of that. And you have been explained your right of self-incrimination by your attorney; have you not?

THE DEFENDANT: Yes.

THE COURT: Very well, I wanted to have that in.

.    .    .    .

THE COURT: You have any questions about that charge against you?

THE DEFENDANT: No, I don't.

THE COURT: How do you plead to the charge of Murder in the Second Degree?

THE DEFENDANT: Guilty.

THE COURT: Now, would you bring all of that. (Papers handed to the Court.) Before the Court can accept any plea, the Constitution, the Court decisions, and the law require that the Court ask you questions and put on the record and make sure the Court in its own mind wants that there is a basis for the, factual basis for the plea, that you're making this plea voluntarily, and that you're making the plea, understand the nature of the offense and possible penalty, so forth. So these questions I ask will be a long series of questions, Mr. Eli, so if you have any questions about my questions

— in other words, anything at all you don't understand, you let the Court know.

.　.　.　.　.

THE COURT:　.Mr. Eli, how old are you?

.　.　.　.

THE DEFENDANT:　27.

THE COURT:　27 years old. And how much education have you had? How many grades have you completed in school?

THE DEFENDANT:　Ah, ten-and-a-half.

.　.　.　.

THE COURT:　You can understand, read and write the English language, can you?

THE DEFENDANT:　Yes, sir, I can.

.　.　.　.

THE COURT:　Now, you received a copy of the Indictment a long time ago in this case, didn't you?

THE DEFENDANT:　Yes.

THE COURT:　Now, although you're pleading guilty to a lesser-included offense in the Indictment, do you understand — did you understand the original Indictment against you for Murder in the First Degree?

THE DEFENDANT:　Yes.

THE COURT:　Do you understand that the matter you're pleading to — Murder in the Second Degree — as Mr. Halsted has orally charged you with in Court; you understand that?

THE DEFENDANT:　Yes.

THE COURT:　Now, have you discussed this case with your attorney as fully as you want to? You told him everything you know about the case?

THE DEFENDANT:　Yes.

THE COURT:　You have?

THE DEFENDANT:　Yes.

THE COURT:　It's very important that you have not left out anything because you are not a lawyer, you cannot tell what some facts might have bearing on your innocence or guilt or not. But you have informed him of everything? You have that right.

THE DEFENDANT:　Yes.

THE COURT:　Now, has Mr. Schutter informed you of the law of the case, possible defenses, possible lack of defenses, if any, or in general explain to you everything about the law connected with the facts?

THE DEFENDANT:　Yes.

THE COURT: Are you satisfied with the way Mr. Schutter has represented you in this case?

THE DEFENDANT: Yes.

THE COURT: Do you have any complaints at all now, because if you do, now is the time to state it. It wouldn't be fair to Mr. Schutter, the Court or anyone else, or even yourself to hide your complaint and not bring it up at this time.

THE DEFENDANT: I'm satisfied.

THE COURT: You're satisfied. Now, do you understand that no matter what the facts may be against you in this case or how heavy you may think the evidence is against you in this case, you always have the right to plead not guilty and place the burden upon the Government to prove your guilt beyond a reasonable doubt. You understand that?

THE DEFENDANT: · Yes, I do.

THE COURT: And you understand that if you plead guilty, which you already have, by pleading guilty you waive several constitutional rights.

THE DEFENDANT: Yes, I understand that.

THE COURT: One is right to a speedy and public trial by the jury or possibly by the Court, although I· believe the Court did turn down the request for trial, but you do have a right to trial by jury, and that you'll be giving that up if you plead guilty. You understand that?

THE DEFENDANT: Yes.

THE COURT: And you also have a right to hear and examine the witnesses against you, and have your attorney, Mr. Schutter, cross-examine them. You understand that right?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you'll be giving up that right if you plead guilty?

THE DEFENDANT: Yes.

THE COURT: You have a right to bring your own witnesses to testify and you yourself may testify or remain silent as you so desire. You understand that right?

THE DEFENDANT: Yes.

THE COURT: You understand you will be giving up that right if you plead guilty.

THE DEFENDANT: That's right.

THE COURT: You understand that you have the right to remain silent, but I have already explained to you, and by answering questions to the Court and pleading in court, you have given up those rights. You understand that?

THE DEFENDANT: Yes.

THE COURT: And you have the right, constitutional right to have

your guilt established beyond a reasonable doubt. You understand that right?

THE DEFENDANT: Yes.

THE COURT: Do you understand you'll be giving up that right by pleading guilty?

THE DEFENDANT: Yes.

THE COURT: In fact if you plead guilty and the Court accepts your guilty plea, you'll be giving up your right to a trial, period. You understand that?

THE DEFENDANT: Yes.

THE COURT: Because the minute the Court accepts your plea of guilty, the Court will just proceed to adjudge you to be guilty and it will just be a matter of sentencing you in this case. You understand that?

THE DEFENDANT: Yes.

. . . .

THE COURT: And, I believe, I heard earlier in this case that you are presently serving a sentence of twelve years. I'd like to point out to you that the sentence given by the court in this case could be ordered to run consecutively to those sentences, as well as concurrently. You know the Court will have to determine whether it's to run concurrently or consecutively. Consecutive means the time on this sentence would not even start to run until you serve the other sentence.

THE DEFENDANT: Yes, I understand that.

THE COURT: And you understand that notwithstanding the agreement between your attorney and the prosecution, the Court could adjudge this a consecutive sentence. I am not bound at all by anything they have agreed to. Is that your understanding?

THE DEFENDANT: Yes.

. . . .

THE COURT: Has anyone in the jail, authorities or any governmental authority put any pressure upon you, or any member of your family get you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Have any promises been made to you in exchange for your plea of guilty in this case other than what's already been stated by counsel in this proceeding this morning?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Nobody is putting any pressure on you?

THE DEFENDANT:   No.

THE COURT:   Now, as to promises, you understand that none of the promises made by you or bargaining of plea-arrangement are binding upon this Court.

THE DEFENDANT:   Yes.

THE COURT:   You understand that this Court does not participate in pre-trial bargaining and just a matter of the Court's approval, and the Court has not promised with anything in advance. You understand that?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Schutter, what the defendant answered here today in Court, is that in accordance with your understanding of the facts and the circumstances of the case in your discussions with him?

MR. SCHUTTER:   It is, your Honor.

THE COURT:   Mr. Eli, do you persist in your plea of guilty in this case?

THE DEFENDANT:   Yes.

THE COURT:   You still wish to plead guilty after the questions the Court has asked?

THE DEFENDANT:   Yes.

THE COURT:   Very well, the defendant insisting his plea of guilty, and the Court after examination of the defendant in Court, and after discussion with counsel in Court, and on the basis of prior trial and hearing in this case, the Court finds that the plea of the defendant was made voluntarily and with the understanding of the nature of the charge against him and the possible sentence therefor.

Robert K. Eli, upon your plea of guilty, the Court finds and adjudges you guilty of the offense of Murder in the Second Degree, it being an offense lesser-included than that set forth in the Indictment and finding of guilty being in violations of Sections 748-2 and 748-4, as previously read by the prosecution before your plea of guilty.