375 P.3d 229

**Genbao GAO, Petitioner/Claimant–Appellant,**

v.

**STATE of Hawai'i, DEPARTMENT OF the ATTORNEY GENERAL, Respondent/Employer–Appellee, Self–Insured.**

No. SCWC–14–0000694.

Supreme Court of Hawai'i.

May 18, 2016.

Louise K.Y. Ing and Zachary M. DiIonno, Honolulu, for petitioner.

James E. Halvorson and Maria C. Cook, Honolulu, for respondent.

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, and WILSON, JJ.

Opinion of the Court by McKENNA, J.

## I. Introduction

On September 2, 2015, this court accepted an Application for Writ of Certiorari ("Application") submitted by Petitioner/Claimant–Appellant Genbao Gao ("Gao"). The Labor and Industrial Relations Appeals Board ("LIRAB") had found that Gao's workplace psychological injury was attributed to a "Notice to Improve Performance" ("NTIP") issued by Gao's employer, the State of Hawai'i, Department of the Attorney General ("Employer" or "State"), relating to Gao's work as a statistician. LIRAB then concluded in a Decision and Order filed January 31, 2014 ("Decision"), that the NTIP was a "reprimand" as defined in HRS § 386–1 (Supp. 2005), and that therefore his injury was not compensable pursuant to HRS § 386–3(c) (Supp.1998). The ICA affirmed LIRAB's Decision, concluding, in relevant part, that

> LIRAB did not err in concluding that [Gao]'s psychological injury allegedly sustained on January 28, 2008 resulted solely from "disciplinary action" as defined by HRS § 386–1 and therefore that [Gao]'s workers' compensation claim [against Respondent/Employer–Appellee, Department of Attorney General ("Employer")] was barred by HRS § 386–3(c). Furthermore, [Gao] failed to establish that Employer acted without proper cause when it issued the NTIP [Notice to Improve Performance] or held the meeting with Gao to discuss the NTIP.

*Gao v. State,* No. CAAP–14–0000694, at 5, 2015 WL 1880738 (App. Apr. 23, 2015)(SDO).

In his pro se Application, Gao presented two questions:

a. Could groundless accusations be equated to "disciplinary actions taken with good faith";

b. Could [LIRAB] and ICA alter the definition of Work Compensation law?

These questions were based on Gao's arguments that: (1) any "disciplinary action" taken against him was based on "groundless accusations" and therefore was not taken in "good faith"; and (2) the ICA deviated from the statutory definition of "disciplinary action" when it affirmed LIRAB's Decision be-

cause the NTIP was not a "reprimand." After Gao obtained counsel through the Hawai'i Appellate Pro Bono Pilot Project, this court ordered supplemental briefing on the following issue:

Whether the Notice to Improve Performance ("NTIP") issued to Petitioner was "disciplinary action," as defined in HRS § 386–1 (Supp.2005) and used in HRS § 386–3(c) (Supp.1998), when viewed in the light of the statutes' legislative histories.

The parties timely filed supplemental briefs, and oral argument was heard.

For the following reasons, this court holds that Gao's NTIP was not "disciplinary action," as that term is defined and used in HRS §§ 386–1 and 386–3. Accordingly, Gao's workers' compensation claim is not barred by HRS § 386–3(c). The legislative histories of HRS §§ 386–1 and 386–3(c) indicate that the legislature intended to include reprimands, suspensions, and discharges that impose a sanction or punishment, but not NTIPs, such as Gao's, in its definition of "disciplinary actions." In addition, the State's Performance Appraisal System's ("PAS['s]") Supervisory Manual ("Manual") [1] for civil service employees, mandated by HRS § 76–41 (Supp.2000), clearly provides that NTIPs are not disciplinary letters. Thus, we vacate the ICA's May 21, 2015 Judgment on Appeal entered pursuant to its April 23, 2015 Summary Disposition Order, and remand this matter to LIRAB for further proceedings consistent with this opinion.

## II. Background

This case concerns a February 8, 2008 workers' compensation claim filed by Gao, a member of Unit 13 of the Hawai'i Government Employees Association ("HGEA" or "Union"). That claim identified "Jan. 28, 2008" as his date of injury. On that date, at a scheduled meeting between Gao and his supervisors, Gao was issued an NTIP dated January 24, 2008. Gao's Union representative was also present at the meeting, as one of Gao's supervisors had informed Gao by e-mail that although Gao did not have a right

to union representation at the NTIP meeting, the supervisor was willing to permit a Union representative to attend. The NTIP stated:

NOTICE TO IMPROVE PERFORM-
ANCE

January 24, 2008

[ ]

Dear Mr. Gao:

Your immediate supervisor, Mr. Paul Perrone, has informed me that your work performance has declined to the point that you are not meeting the performance requirements/expectations of your position. I also understand that your job performance deficiencies and suggestions for improvement have been discussed with you on several occasions.

I am, therefore, placing you on notice that you are being given a period of three months, from January 25, 2008 through April 25, 2008, to bring your performance up to a satisfactory level.

The areas in which your job deficiencies are apparent are noted below. I have included instructions for improving your performance and what your supervisor will do to help you.

1. Assignments are incomplete and not in accordance with instructions.

 (A) All instructions of assignments and other duties will be given to you in writing or email by Supervisor Perrone, including, when applicable, the due date. You need to review the instructions and acknowledge receipt in writing or email immediately to Supervisor Perrone and, if necessary, ask in writing or email for any necessary clarification of the instructions within two work days. This will assist you in completing your assignments in accordance with instructions.

 (B) To help you understand your assignments better and reduce possible misunderstandings or miscommunication at work, Supervisor Perrone will assist you in enrolling in the Depart-

1. Dep't of Human Res. Dev., State of Hawai'i, *Supervisory Manual: Performance Appraisal System* (2001), http://dhrd.hawaii.gov/wp-content/ uploads/2012/12/PASManual0119–1–05.pdf ("Manual").

ment of Human Resources Development's "Communicating at Work" training class.

(C) Your quarterly projects status reports were not completed as instructed. Each staff member's report is important, as it contributes to the branch's overall research plan and schedule. Your next report will be assigned to you shortly; you are to submit this report on time and as instructed. Mr. Perrone has developed a special template for you to use to report the status of your preparation of the annual Uniform Crime Report.

2. Assignments not completed on time.

(A) If you are unable to complete an assignment on time, you need to inform Supervisor Perrone immediately in order to request an extension. You are to provide the following information: (1) a copy of the work that you have completed to date on the assignment; (2) the specific reason(s) for your delay in completing the assignment; and (3) a suggested, new due date, with the specific, revised timeline for completion. It will be Supervisor Perrone's determination if adjustments are appropriate. These procedures may help to resolve any confusion and ensure completion of your assignments on a timely basis.

(B) To assist you in managing your workload, submit a weekly progress report to Supervisor Perrone, in writing or email due on the last work day of each week. This report shall describe the tasks you have worked on, the number of hours spent on each one, and any new issues and/or developments that may affect your work. The progress reports will facilitate communications with your supervisor and may ensure timely completion of your assignments.

(C) Supervisor Perrone will assist you in enrolling in a Fred Pryor Seminar, "Managing Multiple Priorities, Projects, and Deadlines," that will be held at the Sheraton Hotel Waikiki on Jan-

uary 31, 2008. This seminar should help you strengthen your ability to plan, schedule, and complete work on concurrent assignments in a timely manner.

(D) Your Identity Theft Data Elements assignment is past due and needs to be completed as previously instructed, no later than ten work days from the date of this letter. Mr. Perrone will discuss the instruction with you again in order to ensure proper completion of your work.

I hope your performance will improve to a satisfactory level. Supervisor Perrone is willing to work closely with you in this effort. However, if your performance remains unsatisfactory, appropriate action may be taken at the end of the three-month period. This may include an extension of the improvement period, transfer or demotion, or your release from your position and/or discharge from service.

[ ]

The NTIP did not include language that "the Employee may consult the Union on the matter," which was required of all written reprimands by the HGEA collective bargaining agreement applicable to Gao.

Beginning the day after he received the NTIP, on January 29, 2008, Gao was seen by various physicians and providers, and was diagnosed with "major depression, single episode, severe" by Dr. John Huh, MD, a psychiatrist at the Queen's Medical Center Counseling Service. Gao continued to be treated through at least January 20, 2009, the date of his termination.

The sole question before LIRAB was "whether [Gao] sustained a personal psychological injury on January 28, 2008, arising out of and in the course of employment." LIRAB had credited the opinion of an independent evaluator, Dr. Joseph P. Rogers, that Gao had a "diagnosable psychological condition on January 28, 2008[,] that developed and required treatment following [Gao's receipt of] the January 24, 2008 NTIP," and concluded that even so, Gao could not recover for his claimed injury because the injury was "due solely to the NTIP." This was because LIRAB also concluded the NTIP

was a "disciplinary action" against Gao "for which Employer had proper cause," and therefore pursuant to HRS § 386-3(c), Gao's claim was not allowed. Specifically, LIRAB found the NTIP to be a "reprimand as defined in HRS § 386-1 and for purposes of HRS § 386-3(c)" because the NTIP was a "formal written rebuke by [Gao]'s superior for unsatisfactory job performance and constituted a personnel action taken by Employer for [Gao]'s infraction of employer or contract rules."

The ICA affirmed. *See Gao,* SDO at 5.

### III. Standard of Review

 Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise. The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation.

*Coon v. City & Cnty. of Honolulu,* 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (internal quotation marks, citations, and brackets omitted). The standard of review for decisions of LIRAB is well-established:

Appellate review of a LIRAB decision is governed by HRS § 91-14(g) (1993), which states that:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We have previously stated:

[Findings of Fact] are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.

[Conclusions of Law] are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.

A [Conclusion of Law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.

*Igawa v. Koa House Rest.,* 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001) (quoting *In re Water Use Permit Applications,* 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)) (internal quotation marks, citations, and brackets in original omitted).

An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*In re Water Use Permit Applications,* 94 Hawai'i at 119, 9 P.3d at 431 (internal quotation marks and citations omitted).

## IV. Discussion

### A. Hawai'i's Workers' Compensation Statutory Scheme

HRS § 386-3(a) provides, in relevant part:

If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.

Thus, both mental and physical injuries suffered "in the course of employment" are compensable. In 1998, the legislature clarified that:

A claim for mental stress resulting solely from disciplinary action taken in good faith by the employer shall not be allowed; provided that if a collective bargaining agreement or other employment agreement specifies a different standard than good faith for disciplinary actions, *the standards set in the collective bargaining agreement or other employment agreement shall be applied in lieu of the good faith standard.* For purposes of this subsection, the standards set in the collective bargaining agreement or other employment agreement shall be applied in any proceeding before the department, the appellate board, and the appellate courts.

HRS § 386-3(c) (emphasis added). In 2005, the legislature defined "disciplinary action." *See* 2005 Haw. Sess. Laws Act 11 (revising HRS § 386-1). According to HRS § 386-1, " '[d]isciplinary action' means personnel action by an employer in the form of punishment against an employee for infraction of employer or contract rules, in the form of a reprimand, suspension, or discharge."

In short, HRS § 386-3(c) bars recovery for workers' compensation claims for mental stress resulting from certain employer actions. At issue in this case is whether LIRAB incorrectly determined that HRS § 386-

3(c) barred Gao's claim. Accordingly, we address whether the NTIP: (1) was "disciplinary action," i.e., constituted *punishment* in the form of a reprimand, suspension, or discharge; and (2) was taken in good faith (or *in accordance with applicable collective bargaining agreement standards*).

### B. The NTIP Was Not "Disciplinary Action" As Defined in HRS § 386-1 and Used in HRS § 386-3(c)

When HRS § 386-3 was amended by the addition of part (c) in 1998, "disciplinary action" was not defined. *See* 1998 Haw. Sess. Laws Act 224, § 2 at 768. As the legislative chambers did not agree on the breadth of employer actions encompassed by part (c), the exchange of drafts and commentary between the House and Senate offer some insight as to the intended scope of the term, "disciplinary action," at that time. Various iterations of the bill proposed by the House to amend HRS § 386-3 included "other personnel actions" as well as disciplinary actions. The Senate conference co-chairs disagreed with this inclusion, even after the House specified that "other personnel actions" meant "counseling, work evaluation or criticism, job transfer, layoff, demotion, suspension, termination, retirement or other action associated ordinarily with personnel administration." 1998 House Journal, at 885 (statement of Rep. Case) (internal quotation marks omitted). Ultimately, Act 224 did not include a reference to "other personnel actions."

When a definition for "disciplinary action" was proposed in 2005, both the House and Senate shared similar rationale in supporting the bill. Thus, the history behind the 2005 amendment to HRS § 386-1 defining "disciplinary action," and the events leading to the enactment of Act 11 during a special session to override Governor Linda Lingle's veto, provide a view into the legislative intent of the definition of "disciplinary action" as codified at HRS § 386-1. *See* 2005 Haw. Sess. Laws Act 11, § 1 at 811.

#### 1. Legislative History of "Disciplinary Action" as Defined in HRS § 386-1

In 2004, as part of the "Governor's Package" of introduced bills, it was proposed that

HRS § 386-3(c) be amended by striking the existing text and replacing it with:

No compensation shall be allowed for mental injury or illness proximately caused by personnel actions taken in good faith, including disciplinary action, counseling, work evaluation or criticism, job transfer, layoff, demotion, suspension, termination, retirement, or other good faith actions associated ordinarily with personnel administration.

See S.B. 2961, 22nd Leg., Reg. Sess. (2004), http://www.capitol.hawaii.gov/session2004/Bills/SB2961_.htm. This proposed language was comparable to the language proposed by the House in 1998, and would have expanded the preclusion of compensation for workplace mental injuries from those arising from good faith "disciplinary action," to also those arising from "personnel actions" taken in good faith. The bill died in committee. See Hawai'i State Legislature 2004 Legislative Session, SB2961, Hawai'i State Legislature, http://www.capitol.hawaii.gov/session2004/status/SB2961.asp (last updated July 19, 2004).

The following year, several amendments to Hawai'i's workers' compensation law were proposed, one of which added a definition of "disciplinary action" to HRS § 386-1. See S.B. 1808, 23rd Leg., Reg. Sess. (2005), http://www.capitol.hawaii.gov/session2005/bills/SB1808_.htm (" 'Disciplinary action' means personnel action by an employer in the form of punishment against an employee for infraction of employer or contract rules, in the form of a reprimand, suspension, or discharge.").[2]

Yet, before the legislature voted on S.B. 1808, on April 25, 2005, the Department of Labor and Industrial Relations recommended to Governor Lingle that it was necessary to amend existing administrative rules to "[c]larify what constitutes a 'disciplinary action,' " given the term, as it is used in HRS § 386-3(c), was not defined. Recommendation to the Governor on Proposed Rules for Workers' Compensation Reform 2005, Dep't of Labor & Indus. Relations, 17, 29 (Apr. 25, 2005), http://www.state.hi.us/labor/pdf/wc_recomm.pdf [hereinafter Proposed Rules]. The proposed rule stated:

"Disciplinary action" means any action taken in good faith by the employer relating to or used for discipline. Disciplinary action shall include the actual sanction imposed upon an injured employee for the purpose of discipline, as well as any action taken in good faith by an employer that is a part of the disciplinary process, even if no sanction or punishment is ultimately imposed. Examples of disciplinary actions include, but are not limited to, where the employer takes good faith corrective or punitive action:

(1) to produce a specific type of pattern of behavior;

(2) to obtain conformity;

(3) to train or correct;

(4) to impose order on or improve work habits; and

(5) to impose order on or improve the worksite.

If a collective bargaining agreement or other employment agreement specifies a different standard than good faith for disciplinary action, the standards specified in the agreement shall apply.

Id. at 73-74.

The next day, on April 26, 2005, the legislature scheduled a conference committee for April 27, 2005 on S.B. 1808. See Hawai'i State Legislature 2005 Legislative Session, SB1808 SD1 HD1 CD1, Hawai'i State Legislature, http://www.capitol.hawaii.gov/session2005/status/SB1808.asp (last updated Aug. 9, 2005) ("S.B. 1808 Bill Status"). The committee then issued a report dated April 29, 2015. See id.

In recommending that the bill, with amendments, be passed, the committee remarked on the Lingle Administration's re-

---

**2.** The bill underwent several amendments, but the initial language proposed for the definition of "disciplinary action" was unchanged in each revision through ratification. See S.B. 1808 S.D. 1, 23d Leg., Reg. Sess. (2005), http://www.capitol.hawaii.gov/session2005/bills/SB1808_SD 1_.htm; S.B. 1808 S.D. 1, H.D. 1, 23d Leg., Reg. Sess. (2005), http://www.capitol.hawaii.gov/session2005/bills/SB1808_HD1_.htm; S.B. 1808 S.D. 1, H.D. 1, C.D. 1, 23d Leg., Reg. Sess. (2005), http://www.capitol.hawaii.gov/session2005/bills/SB1808_CD1_.htm.

cent efforts to reform workers' compensation law:

> [T]he Director of Labor and Industrial Relations sent to the Governor for approval amendments to the administrative rules that, through rulemaking in 2005, would achieve what it could not achieve during the 2004 and 2005 legislative session.
>
> The proposed changes to the Hawai'i Administrative Rules (HAR) on workers' compensation, if adopted by the Governor, would represent substantial changes in the law regarding compensability.... The proposed rule changes would constitute a substantial departure from the legislative purpose and intent as is now found in chapter 386, HRS, and the existing administrative rules....
>
> ....
>
> The Administration's proposed changes to the administrative rules as sent to the Governor April 25, 2005, usurps legislative authority....
>
> Specifically, the amendments to the administrative rules relating to workers' compensation, as submitted to the Governor on April 25, 2005, are in direct conflict with existing statutory law, rules, policies, and case law on workers' compensation as shown by the following examples.
>
> (1) The Legislature specifically rejected a broad exclusion of stress claims under workers' compensation in 1998 when it limited the exclusion to mental stress claims arising solely from disciplinary action. (Section 386-3(c), HRS. See Act 224, SLH 1998). The legislative intent was recognized by the Intermediate Court of Appeals in *Davenport v. City and County of Honolulu,* 100 Hawai'i 297 [59 P.3d 932] (2002), and by the Hawai'i Supreme Court in affirming the appellate court at 100 Hawai'i 481 [60 P.3d 882]. **The Administration now seeks to define "disciplinary action" to include what are essentially non-disciplinary, personnel matters.** *See* proposed change to section 12-10-1, HAR

(definition of "disciplinary action" includes action where "no sanction or punishment is ultimately imposed."). **The proposed change would result in stress injury claims intended by the law to be compensable to be improperly excluded from workers' compensation coverage[.]** [3]

The bill passed both chambers and was sent to the Governor for signature by May 6, 2005. *See* S.B. 1808 Bill Status. Nevertheless, the Governor had signed and approved the administrative rules proposed by the Department of Labor and Industrial Relations, causing them to go into effect on May 13, 2005. *See* Gov. Msg. No. 369 (June 29, 2005), http://www.capitol.hawaii.gov/session2005/GMS/GM_SB1808.pdf; *see also* Hawai'i Administrative Rules (HAR) § 12-10-1 (effective 2005-2011). The Governor vetoed S.B. 1808 on June 29, 2005. *See* Gov. Msg. No. 369. In a special session, the legislature overrode the veto and enacted the bill. *See* S.B. 1808 Bill Status; 2005 Haw. Sess. Laws Act 11, at 811-21. The recently adopted administrative rules were nullified by the new law. *See* 2005 Haw. Sess. Laws Act 11, § 7 at 818 ("No rules adopted or amended on or after January 1, 2005, pertaining to any workers' compensation standard or procedure arising under this chapter shall have the force and effect of law....").

### 2. Legislative Intent Behind the Statutory Definition of "Disciplinary Action" in HRS § 386-1

The legislature appears to have intended a narrow scope for the meaning of "disciplinary action," as defined in HRS § 386-1 and used in HRS § 386-3(c). As reiterated in the Conference Committee and House Standing Committee Reports, "[t]he Legislature specifically rejected a broad exclusion of stress claims under workers' compensation[.]in 1998 when it limited the exclusion to mental stress claims arising solely from disciplinary action." Conf. Comm. Rep. (citing HRS

---

3. Conf. Comm. Rep. No. 130, in 2005 House Journal, at 1792, 2005 Senate Journal, at 1050, http://www.capitol.hawaii.gov/session2005/commreports/ SB1808_CD1_CCR130_.htm [hereinafter Conf. Comm. Rep.] (emphasis added); *see also* H. Stand. Comm. Rep. No. 1527, in

2005 House Journal, at 1633-34, http://www.capitol.hawaii.gov/session2005/commreports/SB1808_HD1_HSCR1527_.htm [hereinafter H. Stand. Comm. Rep.] (expressing identical concern).

§ 386–3(c); 1998 Haw. Sess. Laws Act 224, § 2 at 768); H. Stand. Comm. Rep. (same). The legislature's renouncement of the 2005 revisions to the Hawai'i Administrative Rules indicates that that proposed definition was unacceptably broad.

In other words, the legislature stated that it did not intend "disciplinary action," as ultimately codified at HRS § 386–1, to encompass all that the 2005 HAR revisions did. The legislature took issue with the inclusion in the 2005 HAR revisions of *"any* action taken in good faith by an employer that is a part of the disciplinary process, *even if no sanction or punishment is ultimately imposed"* as part of the definition of "disciplinary action." *Proposed Rules* (emphasis added); *see* Conf. Comm. Rep. (quoting *id.*). The legislature expressed concern that mental injury, arising from actions that do not result in the imposition of sanction or punishment, would not be compensable under the 2005 HAR revisions. *See* Conf. Comm. Rep. In this manner, the legislature acknowledged the existence of a category of actions they viewed to be "part of the disciplinary process" (but insufficient to be "disciplinary action") that would not bar recovery for an associated mental injury claim under HRS § 386–3(c).

### 3. Gao's NTIP Was Not Punishment in the Form of a Reprimand, Suspension, or Discharge

■ Critical to the legislature's definition of "disciplinary action" is the mandate of punishment for the infraction of a rule. *See* HRS § 386–1 (" 'Disciplinary action' means personnel action by an employer in the form of punishment against an employee for infraction of employer or contract rules, in the form of a reprimand, suspension, or discharge."). Gao's NTIP referred to possible sanctions at the end of the three-month improvement period, but did not impose sanctions at that time. A mental injury claim arising from this kind of action appears to be an example of what the legislature protected when it nullified the 2005 HAR revisions—action that is "part of the disciplinary process," but is not itself "disciplinary action" because no sanction, such as a suspension or discharge, had yet been imposed. *See* Conf. Comm. Rep.

The NTIP did not punish Gao. Granted, the NTIP highlighted Gao's performance deficiencies; however, even one of Gao's supervisors summarized the NTIP as: "[S]o that's what the letter, the notice to improve was, that these are our concerns, this is how we're going to work with you to improve your performance." [4]

Therefore, upon examining the whole record, we conclude LIRAB's characterization of the NTIP as a "formal written rebuke[5]" is clearly erroneous. The document is clearly titled, "Notice to Improve Performance." This is particularly relevant because pursuant to the State's Performance Appraisal System's Supervisory Manual, an NTIP has a specific meaning. The Manual identifies NTIPs "as part of Phase 2, Performance Monitoring and Coaching" of the PAS—a stage that precedes any consideration of issuance of an "Overall Rating of 'Does Not Meet Expectations.' " Manual at 25. The Manual also states: (1) "[t]he performance appraisal process is not the correct way to handle 'disciplinary-type' problems," *id.* at 16; and (2) "the 'Notice to Improve Performance' is *not* considered a *disciplinary* letter." *Id.* at 68 (answering Q39, "Can the PAS be used as a disciplinary tool?").

As the Manual was created pursuant to HRS § 76–41 (establishing a performance appraisal system for civil service employees), and is applicable to civil services employees

---

4. Gao expressed during the LIRAB hearing that the three-month improvement period outlined in the NTIP was "probation." LIRAB then based its conclusion that the NTIP was "disciplinary action" in the form of a written "reprimand" in part on Gao's subjective view, but did not explain why an improvement or probationary period, as perceived by Gao, superseded other facts supporting a determination that the NTIP was not "disciplinary action" as defined in HRS § 386–1 and used in HRS § 386–3(c). Whether a person-

nel action is "disciplinary action," as defined in HRS § 386–1 and used in HRS § 386–3(c), is primarily a legal inquiry. Accordingly, Gao's subjective view does not impact the court's decision.

5. *See Webster's New Collegiate Dictionary* 705 (2d ed. 1959) (defining "rebuke" as "[t]o reprehend sharply; to reprimand").

including Gao, by the State's own terms, Gao's NTIP was not punitive. Indeed, Gao's NTIP follows the Manual's suggested NTIP template nearly verbatim. *Compare supra* Part II (quoting text from NTIP), *with* Manual at 56. The Manual clearly provides that NTIPs are not "disciplinary actions."[6]

In sum, LIRAB's broad application of HRS § 386–3(c) to Gao's NTIP is error as a matter of law. The NTIP did not punish Gao in the form of a reprimand, suspension, or discharge.

## C. Even if the NTIP Can Be Construed to Constitute "Punishment" in the Form of a Written Reprimand, the NTIP Did Not Conform to the Union's Collective Bargaining Agreement for Written Reprimands

HRS § 386–3(c) provides, "[T]he standards set in the collective bargaining agreement or other employment agreement shall be applied in lieu of the good faith standard." Thus, even if we were to not disturb LIRAB's finding that the NTIP—a written document—was a "reprimand for which Employer had proper cause," the NTIP must nevertheless comport with the HGEA collective bargaining agreement governing Gao's employment. That agreement states, "Regular Employees shall not be disciplined without proper cause," and sets forth at least [7] one specific minimum standard for written reprimands: "[a] written reprimand issued to an Employee *shall* contain the specific reasons for the action *and* a statement that the Employee may consult the Union on the matter." (emphasis added).

On its face, the NTIP does not meet HGEA's standards for written reprimands because the NTIP does not contain "a statement that the Employee may consult the Union on the matter." Moreover, Gao was specifically notified by his superior that he was not entitled to Union representation at the January 28, 2008 meeting at which he received the NTIP. That Gao's Union representative was nevertheless present at the January 28 meeting does not abrogate the Employer's responsibility to meet the minimum standards required of written reprimands set forth in the HGEA collective bargaining agreement.

In sum, even if the NTIP was issued with "proper cause" in response to Gao's workplace actions, the NTIP did not satisfy all of the standards of the collective bargaining agreement, contrary to the requirements of HRS § 386–3(c).

## V. Conclusion

For the foregoing reasons, we vacate the ICA's May 21, 2015 Judgment on Appeal entered pursuant to its April 23, 2015 Summary Disposition Order, and remand this matter to LIRAB for further proceedings consistent with this opinion.

---

6. The Manual is not a part of the record on appeal; Gao represented himself until pro bono counsel appeared and counsel brought it to our attention in supplemental briefing. The Manual is available at "ehawaii.gov" by accessing the following hyperlinks: "government," then "departments and agencies," then "Human Resources Development (DHRD), Department of," then "http://dhrd.hawaii.gov," then "state hr professionals," then "Performance Management," then "Performance Appraisal System (PAS) Information," and then lastly, "Performance Appraisal System (PAS) Supervisory Manual." During oral argument, Gao requested that we take judicial notice of it, and we do so now. *See, e.g., Eli v. State*, 63 Haw. 474, 478, 630 P.2d 113, 116 (1981) ("Where the equity of the situation dictates, we will use our discretion to take judicial notice of matters of which courts may properly take judicial notice but which are not part of the record on appeal." (citation omitted));

*Williams v. Aona*, 121 Hawai'i 1, 11 n. 6, 210 P.3d 501, 511 n. 6 (2009) (Supreme Court taking judicial notice of collective bargaining agreement because agreement was "matter of public record and easily verifiable" (citing HRS §§ 92F–3, 92F–11(a) (1993))). *See also* Hawai'i Rules of Evidence ("HRE") Rule 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *id.* Rule 201(c) ("A court may take judicial notice, whether requested or not."); *id.* Rule 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

7. Only excerpts from the collective bargaining agreement were contained in the record.