**Electronically Filed
Supreme Court
SCWC-19-0000334
04-MAR-2021
08:02 AM
Dkt. 21 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

MAGGIE KWONG, Petitioner/Defendant-Appellant.

SCWC-19-0000334

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000334; CASE NO. 1DTA-17-02539)

MARCH 4, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE AYABE, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

This case requires us to consider when a court must
take judicial notice of a fact because it is generally known.
Defendant Maggie Kwong was convicted of Operating a Vehicle
Under the Influence of an Intoxicant (OVUII), Hawai'i Revised

Statutes (HRS) § 291E-61(a)(1) (2014), after a bench trial in the District Court of the First Circuit.[1]

During Kwong's motion for judgment of acquittal, and again during closing arguments, Kwong's attorney asked the district court to take judicial notice that 60 miles per hour (mph) is equivalent to 88 feet per second as a matter that is generally known.[2]  The district court appeared to conclude that it could not take judicial notice of the conversion between mph and feet per second and that Kwong would have to present expert testimony.  The court found Kwong guilty of OVUII, and the Intermediate Court of Appeals (ICA) affirmed.

We agree with Kwong that the court was required to take judicial notice that 30 mph is equivalent to 44 feet per second.  The "necessary information" requirement in Hawai‘i Rules of Evidence (HRE) Rule 201(d) requires a party to provide enough information for the court to determine whether judicial notice is proper.  HRE Rule 201(d) cmt.  If a fact is generally known or a matter of common knowledge, a party need not provide additional information to justify judicial notice.  21B Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Federal

---

[1]     The Honorable William M. Domingo presided.

[2]     Kwong's attorney also explained that from this fact, the district court could extrapolate that 30 mph is the equivalent of 44 feet per second because 30 mph is half of 60 mph.

Practice and Procedure § 5107.1 n.35 (2d ed. 2020).  Here, all the facts needed to infer 44 feet per second from 30 mph — 5280 feet in a mile, 60 minutes in an hour, and 60 seconds in a minute — are common knowledge, and the math to convert mph to feet per second is straightforward.  Thus, judicial notice of this fact was mandatory.

Nevertheless, since taking judicial notice would not have affected the outcome of this case, any error was harmless.  Kwong's other issues are without merit.  Accordingly, we affirm Kwong's conviction.

## II.  BACKGROUND

In July 2017, the State charged Kwong with OVUII in violation of HRS § 291E-61(a)(1).[3]  The case proceeded to a bench trial in March 2018.

### A.  District Court Trial

### 1.  Officer Wong's Testimony

Honolulu Police Department Officer Josh Wong testified

---

[3]    HRS § 291E-61(a)(1) provides:

   (a)   A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

      (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

on behalf of the State.  At approximately 3:30 A.M. on June 23, 2017, Officer Wong stopped Kwong for an unsafe lane change violation.  Officer Wong had been in the left lane traveling eastbound on Kapiolani Boulevard about two-and-a-half car lengths behind a pickup truck.  Kwong had been in the right lane.  They were both traveling between 30 and 40 mph.

When they were approximately 30 feet from the intersection of Kapiolani Boulevard and Isenberg Street, Kwong abruptly cut from the right lane of Kapiolani across the middle lane and into the far-left lane, without using a turn signal. She pulled in front of Officer Wong and behind the pickup truck, which had been starting to make a left turn onto Isenberg Street.  Officer Wong testified, "[I]n order to avoid a rear-end collision[,] I slammed on my brakes.  At that point, whatever was on my seat that wasn't fastened, all the stuff went onto the floorboard."

On cross-examination, Officer Wong affirmed the times and distances involved:

> Q.   And this all happened in less than 30 feet, going 30 miles an hour?
>
> A.   Yes.
>
> Q.   Do you know how many feet you travel at 30 miles per hour in one second?
>
> A.   No.
>
> Q.   It's 44.
>      So you're saying that this vehicle, in the amount of

time it took to go 30 feet, which would take -- God -- less than two thirds of a second, was able to go from Lane 1 to Lane 3?

A.    Yeah.

After crossing into the left lane of Kapiolani Boulevard, Kwong turned left onto Isenberg Street.  Officer Wong followed her and activated his lights.  Kwong pulled over immediately.

Officer Wong approached Kwong's car and told her he pulled her over for an unsafe lane change.  Kwong apologized and told him she had changed her mind at the last minute.  While Kwong was talking, Officer Wong noted several indicia of intoxication: he could smell a "very strong odor of alcohol coming from her breath"; Kwong's eyes were "red, kind of bloodshot, and glassy"; and her speech was slurred.  Accordingly, Officer Wong asked her to participate in standardized field sobriety tests (SFSTs).  Kwong responded, "Yeah, it's okay.  I did have a couple of drinks," and got out of the car.  Officer Wong testified that Kwong stumbled after getting out of her vehicle.

Kwong did the walk-and-turn and one-leg-stand tests on the road, which was flat and partially lit.  Officer Wong testified that he had to "go over the instructions for each test at least two to three times before she understood."  During the

instructional stage of the walk-and-turn test — when Kwong was supposed to stand still with her feet aligned heel-to-toe — she had been "unable to maintain her balance three times." Ultimately, Kwong did not perform the test properly, missing heel-to-toe, stepping off the line, and raising her arms for balance several times.  According to Officer Wong, Kwong also did not perform the one-leg-stand test properly.  Throughout the test, she swayed from side to side, raised her arms, and had to put her foot down once.  After the conclusion of the SFSTs, Officer Wong arrested Kwong for OVUII.

### 2.   Motion for Judgment of Acquittal

After Officer Wong testified, Kwong's counsel moved for a judgment of acquittal and the following exchange occurred:

> [COUNSEL]: In the light most favorable to the State -- and I'm going to have to ask the judge to take judicial notice of something.  In -- physics never changes.  If you're going 60 miles per hour, you're going 88 feet per second.  It never changes.  It's a constant.  It's like there's 12 inches in a foot.
>
> THE COURT: Yeah.  I -- I can't take judicial notice of that.
>
> [COUNSEL]: Why?
>
> THE COURT: You -- you want an expert, you bring an expert.
>
> [COUNSEL]: It's not an expert.  It's like 12 inches in a foot.  Everybody knows it.  It's like the sun comes up in the morning from the east.
>
> THE COURT: Right, right.
> Keep -- continue.  Continue.
>
> [COUNSEL]: Okay.  So if a car travels 88 feet every second at 60 miles per hour, at 30 feet it's going to travel 44 feet in one second.  He's saying that this person drove

> from Lane 1 to Lane 3. He was 30 feet from the
> intersection, traveling approximately 35 miles per hour,
> even if he's slowing down, and got in front of him before
> he reached the intersection. It's physically impossible,
> based on his testimony, for that to happen. It could not
> happen. There would have been a crash. He could not have
> slowed down in one second and avoided that collision.
> That's not what happened, because it's physically
> impossible to happen. It can't happen. It could not have
> happened as he testified.
>
> THE COURT: Okay. What else?

The district court denied Kwong's motion for

acquittal:

> THE COURT: Okay.
>
> All right. In review of -- of the one witness that we had,
> getting to your point as far as whether or not -- the
> testimony of Officer Wong was that he was driving along,
> going on Kapiolani, and there was a truck in front of him
> about to make a left turn into Isenberg, noticed the
> defendant's car to the far right, and his testimony was
> that she cut in front of him. He had to brake in order to
> avoid a collision. Physics aside at this point, I don't
> have any expert as far as what's going -- but that's his
> testimony. And it's also corroborated by the fact that
> when he explained to her why he pulled her over, Defendant
> in her own statement said, I'm sorry; I've decided too
> late, I believe, you know, to make a decision. So that is
> consistent with his statement that she cut in front of him,
> and he had to avoid the collision and step on his brakes.
> He also testified that all of the -- whatever things he had
> on the front seat, because he had to brake suddenly, were
> taken off the seat and, I guess, pushed to the front of his
> car.
>
> . . . .
>
> So based on that, in the light most favorable, I'll deny
> your motion for judgment of acquittal.

### 3.    Kwong's Testimony

Kwong testified that on June 23, 2017, she had been

driving a friend home. Her friend had been giving her

directions and told her to turn at the last minute, and Kwong

admitted cutting across two lanes on Kapiolani to make the turn. However, Kwong disputed Officer Wong's testimony that the lane change had been so abrupt he had to slam on his brakes.

Kwong also controverted Officer Wong's testimony that she had stumbled exiting her car. She testified that she was wearing high-heeled boots and that her heel caught on the edge of the door briefly when she got out, but that she did not "stumble." Kwong contended that her high heels also made it difficult to perform the SFSTs. However, Kwong took the boots off for the one-leg-stand test.

On cross-examination, Kwong testified that her friend worked at a bar and Kwong had spent approximately four-and-a-half hours at the bar waiting for her friend to get off work. She drank while at the bar — she had one beer with pizza and "sipped" on three shots of whiskey over the course of the night.

### 4. Closing Arguments and Verdict

In his closing, Kwong's counsel incorporated the argument he had made in support of Kwong's motion for judgment of acquittal. He contended, "[I]t's still the Defense's position that the officer's testimony is not credible, because it's physically impossible to have occurred what he testified to."

The district court found Kwong guilty: "[B]ased on the

testimony of Officer Wong, looking at the -- the driving itself, and her performance on the field sobriety test, the Court finds that Ms. Kwong -- or the State has proven beyond a reasonable doubt that Ms. Kwong was impaired by alcohol." The district court made no findings regarding the distances or speeds to which Officer Wong had testified, and it did not address Kwong's prior request for judicial notice.

### 5. The ICA's Summary Disposition Order

On appeal, Kwong argued the district court erred in refusing to take judicial notice of the fact that 30 mph is the same as 44 feet per second. Kwong contended, "Had the court taken judicial notice as requested that 30 mph is 44 [feet] per second, it would have been evident to the court that the officer's testimony was not credible."

She also asked the ICA to take judicial notice of an aerial map depicting the intersection of Kapiolani Boulevard and Isenberg Street. Kwong did not provide a source for the image. On the map, Kwong marked the locations of Kwong's car, Officer Wong's car, and the pickup truck that was turning left and the widths of the middle-left and left lanes.

The ICA affirmed Kwong's conviction. First, the ICA observed that "it does not appear the District Court ultimately rejected Kwong's judicial notice request," noting that although

the district court initially declined to take judicial notice, the court "appeared agreeable when defense counsel explained why judicial notice would be appropriate[.]"

Second, the ICA held that the district court was not required to take judicial notice that 30 mph is the equivalent of 44 feet per second under HRE Rules 201(b) and (d). The district court had the discretion to take judicial notice of such a fact because "it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' and the mathematical computation leading to that result is indisputable." However, according to the ICA, a trial court "is required to take judicial notice of an adjudicative fact only 'if requested by a party and supplied with the necessary information.'" Thus, citing Drake v. Holstead, 757 S.W.2d 909, 911 (Tex. App. 1988), the ICA concluded that Kwong "should have supplied the District Court with some means to verify the figures for which she sought judicial notice."

Third, the ICA concluded that even if the district court had erred in refusing to take judicial notice that 30 mph is 44 feet per second, the error was harmless beyond a reasonable doubt. Kwong cross-examined Officer Wong about the fact that 30 mph is 44 feet per second and referenced that

10

number in her arguments.

In a footnote, the ICA refused to take judicial notice of the map in Kwong's opening brief because "Kwong did not supply this court with the 'necessary information' to verify the annotated map's accuracy, including the source of the map." Further, the ICA held there were no equitable grounds for taking judicial notice of a map that was not introduced below or part of the record on appeal.

Finally, the ICA observed that "the crux of Kwong's argument on appeal is to question the District Court's credibility determinations." Credibility determinations are for the trial judge, not the appellate court. Because "[t]he District Court clearly found Officer Wong credible at least as to the testimony the court expressly relied upon," the ICA concluded, "[o]n this record, we will not disturb the District Court's implicit finding that Officer Wong was credible."

### III.  STANDARDS OF REVIEW

#### A.  Judicial Notice

"When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard." State v. West, 95 Hawai'i 22, 25, 18 P.3d 884, 887 (2001) (quoting State v. Staley, 91 Hawai'i 275, 281, 982 P.2d 904, 910 (1999)) (applying right/wrong

11

standard to question of mandatory judicial notice).

## B.    Credibility of Witnesses

> It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part. Lono v. State, 63 Haw. 470, 473, 629 P.2d 630, 633 (1981). As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous. Id. at 473–74, 629 P.2d at 633. An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.

State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996).

## IV.   DISCUSSION

In her application for writ of certiorari, Kwong argues that the district court erred by failing to take judicial notice of (1) the fact that 30 mph equals 44 feet per second and (2) an aerial photograph of the intersection in question. Additionally, she contends that the ICA erred in declining to review Officer Wong's testimony when his testimony "contradicted the laws of physics[.]"

As explained below, the district court was required to take judicial notice that 30 mph equals 44 feet per second, but Kwong's other issues are without merit.

## A.    Judicial Notice

HRE Rule 201 governs judicial notice of adjudicative

12

facts[4] and provides in relevant part:

> (b)     Kinds of facts.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c)     When discretionary.  A court may take judicial notice, whether requested or not.
>
> (d)     When mandatory.  A court shall take judicial notice if requested by a party and supplied with the necessary information.

The purpose of the judicial notice doctrine is twofold.  First, it promotes efficiency by eliminating "the necessity of taking the time of the court and jury to make formal proof of a fact which cannot be disputed[.]"  State v. Moses, 102 Hawai'i 449, 454, 77 P.3d 940, 945 (2003) (quoting In re Estate of Herbert, 90 Hawai'i at 466, 979 P.2d at 62).  Second, it promotes the legitimacy of the courts by ensuring that decisions are not "contrary to what is accepted as indisputable fact[.]"  21B Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5102 (2d ed. 2020) (quoting Edmund M. Morgan, Judicial Notice, 57 Harv. L. Rev. 269, 273 (1944)).  For that reason, "[c]ourts . . . may not shut their minds to truths that all

---

[4]     An "adjudicative fact" is "the kind of fact[] that [is] ordinarily decided by the trier of fact; for example, who did what to whom, when, where, how, and why."  In re Estate of Herbert, 90 Hawai'i 443, 466, 979 P.2d 39, 62 (1999) (quoting State v. Kwak, 80 Hawai'i 297, 306, 909 P.2d 1112, 1121 (1995)).

others can see and understand, and are not at liberty to entirely disregard facts of general knowledge.  Hence, the rule governing judicial notice is mandatory when it applies[.]"  29 Am. Jur. 2d Evidence § 37 (2021) (footnotes omitted) (citing, inter alia, United States v. Butler, 297 U.S. 1, 61 (1936)).

1.  **The ICA Erred in Concluding that Trial Courts Are Not Required to Take Judicial Notice of Equivalent Measurements Unless Provided with the Mathematical Equation for Conversion**

A fact may be judicially noticed if it is either "(1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  HRE Rule 201(b); see also Uyeda v. Schermer, 144 Hawai'i 163, 172, 439 P.3d 115, 124 (2019) ("[A] fact is a proper subject for judicial notice if it is common knowledge or easily verifiable." (quoting Almeida v. Correa, 51 Haw. 594, 605, 465 P.2d 564, 572 (1970))).  The ICA correctly observed that the conversion of mph to feet per second is proper for judicial notice because it is indisputable:

> [T]he fact that 30 mph is the equivalent of 44 feet per second is proper for judicial notice under [HRE] Rule 201(b) (2016), in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and the mathematical computation leading to that result is indisputable.

Nevertheless, the ICA held that judicial notice was not mandated because Kwong did not provide the court with the "necessary information" as required by HRE Rule 201(d): "To the extent the conversion of 30 mph to feet per second requires mathematical calculations, Kwong should have supplied the District Court with some means to verify the figures for which she sought judicial notice." We disagree.

This court has previously only addressed the question of mandatory judicial notice under HRE Rule 201(d) with respect to court records. In State v. Akana, 68 Haw. 164, 165–66, 706 P.2d 1300, 1302 (1985), we held the trial court was required to judicially notice court records upon request because the files were in the court's possession and could not be questioned. Noting that HRE Rule 201(d) requires a party to provide the necessary information, we found that requirement satisfied because the court had ready access to its own records, although they had not been provided by the parties. Id. We reaffirmed this interpretation of HRE Rule 201(d) in a footnote in Oahu Publications, Inc. v. Abercrombie, 134 Hawai'i 16, 20 n.3, 332 P.3d 159, 163 n.3 (2014), where we observed that the ICA was required to take judicial notice of records upon request because the ICA had access to the records through the Judiciary Information Management System.

15

Although we have never addressed the question of mandatory judicial notice with respect to other facts, Akana and Oahu Publications demonstrate that the "necessary information" requirement in HRE Rule 201(d) is not intended to be a formalistic hurdle — if the court has ready access to the information that is to be judicially noticed, then it has the necessary information to make notice mandatory.  In other words, the "necessary information" requirement of HRE Rule 201(d) means that a party must provide enough information for a court to determine whether judicial notice is proper under HRE Rule 201(b).

Thus, to satisfy the mandates of HRE Rule 201(d), a party must (1) request the court take judicial notice, and (2) provide enough information to establish that the fact is either generally known or capable of accurate and ready determination. HRE Rule 201 cmt. ("Should the court fail to take discretionary judicial notice of an adjudicative fact, . . . such notice is mandated upon request of a party, provided the party supplies the court with data consistent with the requirement of subsection (b)."); 31A C.J.S. Evidence § 17 (2021) (party requesting notice must provide the court with "sufficient source material to allow the court to determine whether taking judicial notice is warranted").

16

Here, Kwong argued that it is generally known that 60 mph is the equivalent of 88 feet per second, just as twelve inches is equivalent to one foot.  Kwong's attorney then explained that from that fact, the district court could extrapolate that 30 mph is the equivalent of 44 feet per second, since 30 mph is half of 60 mph.

To satisfy HRE Rule 201(d)'s "necessary information" requirement for facts that are generally known, a party need only state that the fact should be noticed as a matter of common knowledge: "[O]ne need not provide a 'source' for a generally known fact."[5]  21B Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5107.1 n.35 (2d ed. 2020); see also id. at § 5108.

A fact is common knowledge if it "is so commonly known in the community as to make it unprofitable to require proof, and so certainly known as to make it indisputable among reasonable people."  2 Kenneth S. Broun et al., McCormick On Evidence § 329 (Robert P. Mosteller ed., 8th ed. 2020) (footnote

---

[5]     At a bare minimum, the request [for judicial notice] should specify precisely the adjudicative fact that the court should notice, state whether tha[t] fact can be noticed as a matter of common knowledge, and, if not, cite the court to some source of reasonably indisputable accuracy in which the noticed fact may be found.

21B Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5107.1 (2d ed. 2020) (emphasis added) (footnotes omitted).

omitted).  In this analysis, courts look to whether the fact is generally known to a "person of ordinary understanding and observation."  State v. Arena, 46 Haw. 315, 341, 379 P.2d 594, 609 (1963) (citation omitted); see also 2 Kenneth S. Broun, et al., McCormick On Evidence § 329 (Robert P. Mosteller ed., 8th ed. 2020) ("[T]he more reflective opinions speak in terms of 'what well-informed persons generally know' or 'the knowledge that every intelligent person has.'" (footnotes omitted)).

A judge need not personally know or remember the fact in question for it to be common knowledge; accordingly, the court can refer to other sources to aid their analysis.  Pua v. Hilo Tribune-Herald, Ltd., 31 Haw. 65, 70 (Haw. Terr. 1929); see generally 21B Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5105.1 (2d ed. 2020).  Thus, to some extent, whether a fact is "common knowledge" depends on the ease with which it can be ascertained: if the truth of a fact is apparent after only a cursory examination, it is likely "common knowledge."  See Arena, 46 Haw. at 343, 379 P.2d at 610 ("[A]s a matter of common knowledge[,] a court may take judicial notice that under normal conditions an automobile may be stopped within certain distance limits.").

18

A fact may also be common knowledge if it can be derived "by a process of combining facts that are generally known" using mathematics.  21B Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5105 (2d ed. 2020) (discussing "combinatorial common knowledge").  Courts regularly use basic math to take judicial notice of facts that might otherwise not be common knowledge.  E.g., People v. Bradley, 183 Cal. Rptr. 434, 437 n.6 (Cal. Ct. App. 1982) ("We judicially notice the mathematical truth of a 12" x 12" opening having a 17" diagonal."); Allen v. Indus. Comm'n, 729 P.2d 15, 17 n.1 (Utah 1986) ("We take judicial notice that liquid milk weighs about the same as liquid water or approximately 8 ⅓ pounds per gallon.  Thus, four gallons of milk weigh about 33 pounds without the containers and crate."); Miller v. Fed. Land Bank of Spokane, 587 F.2d 415, 422 (9th Cir. 1978) (holding that trial court must take judicial notice of a reduction in mortgage debt because "[t]his is a matter of mathematics, of which the court could and should have taken judicial notice").

As relevant here, numerous courts have concluded that the conversion of mph into feet per second is a matter of "mere mathematical calculation" and have taken judicial notice of the

conversion rate as a matter of common knowledge.[6] Davidian v. Wendell, 37 So. 2d 570, 574 (Miss. 1948) ("[We] know as a matter of mere mathematical calculation that at 30 miles per hour a car travels 44 feet per second[.]"); see also Mallard v. Earl, 665 A.2d 287, 295 n.6 (Md. Ct. Spec. App. 1995) ("We observe that a speed range of 35 to 40 miles per hour is equivalent to a range of 51 to 58 feet per second. To be sure, the testimony referred to speeds only in miles per hour, not in feet per second. We note, though, that the conversion can be easily calculated[.]").

The two jurisdictions to consider whether the conversion of mph to feet per second must be judicially noticed, Wisconsin and Texas, have concluded that judicial notice is mandatory. In Schmiedeck v. Gerard, the Wisconsin Supreme Court held that a trial court abused its discretion[7] by refusing to take judicial notice of the conversion from mph into feet per

---

[6] Many other courts have taken judicial notice of the conversion of mph to feet per second without a source or analysis, implying that such conversions are matters of common knowledge. E.g., Greyhound Corp. v. Sparks, 283 F.2d 44, 48 (5th Cir. 1960) (noting that the car was traveling at "a speed no less than 40 miles per hour (nearly 60 feet per second)"); Eggleston v. Louisiana & A. Ry. Co., 192 So. 774, 780 (La. Ct. App. 1939) (observing that "[t]he machine traveled 60 miles per hour or 88 feet per second"); De Lay v. Ward, 262 S.W.2d 628, 635 (Mo. 1953) ("If defendant was traveling at 10 miles per hour, he was moving at the rate of 14.66 feet per second.").

[7] Schmiedeck was decided before the rule of mandatory judicial notice, Wis. Stat. § 902.01(4) (1974), was enacted, and therefore the court used the abuse of discretion standard. But the 1974 Judicial Council Committee's Notes for Wis. Stat. § 902.01(4) suggest that judicial notice in Schmiedeck was mandatory because the adjudicative facts were "indisputable."

second, saying "[t]his is not a complex computation." 166 N.W.2d 136, 139-40 (Wis. 1969). Notably, the court did not require the plaintiff to provide the court with the applicable equations, instead construing plaintiff's request "that the trial court take judicial notice that a vehicle traveling 20 miles per hour would be moving approximately 29 feet per second" as a request "that the trial court take judicial notice of facts necessary to convert miles per hour into feet per second[.]" Id. at 138-39.

The ICA cited Drake to support its conclusion that a party needs to provide the court with the necessary equations before it is required to take judicial notice. In Drake, the trial court refused to take judicial notice of how far a car going 40 mph would travel in 3.6 seconds, telling the plaintiff, "[t]hat takes testimony[.]" 757 S.W.2d at 910. The Texas Court of Appeals held to the contrary, explaining that "[o]nce the number of minutes in an hour, seconds in a minute, and feet in a mile are ascertained,[8] it is a matter of simple mathematical computation to arrive at the number of feet traveled in a second by an object traveling at a given rate per mile." Id. at 911.

The ICA presumably relied on the fact that the Drake

---

[8] The court noted that the number of feet in a mile is a matter of general knowledge. Id. at 911.

opinion shows the equations necessary to deduce how many feet per second a car travels if it is going 40 and 50 mph and that the Texas Court of Appeals emphasized that "[a] party seeking mandatory judicial notice must supply the court with the 'necessary information.'"  Id.  However, contrary to the ICA's assumption, the plaintiff in Drake did not supply the trial court with the distance/time calculations at the time the court made its ruling — she filed them after trial in her bill of exceptions.[9]  Id. ("In her bill of exceptions, plaintiff supplied the court with a sheet of typewritten computations[.]"); id. at 910 (quoting the transcript of the proceeding, in which the plaintiff did not provide the court with the applicable equations).

This court previously recognized in an analogous context that unit conversion may be a matter of common knowledge if the values needed for the calculation are commonly known. State v. Mattiello, 90 Hawai‘i 255, 262 n.9, 978 P.2d 693, 700 n.9 (1999).  In Mattiello, we held that to meet its burden, the State needed to adduce evidence "regarding the conversion of milliliters to fluid ounces" because "we expect that few among

_____

[9]    A party files a bill of exception with the trial court after trial in order "to complain on appeal about a matter that would not otherwise appear in the record."  Tex. R. App. P. 33.2 (1997).  The bill must be filed "no later than 30 days after the filing party's notice of appeal is filed[.]" Id.

us could be expected independently to recall that there are 29.573 milliliters in a fluid ounce."  Id.  However, we also noted that measurement conversion may be considered common knowledge if the underlying numbers are commonly known, "such as the conversion from avoirdupois[10] ounces to pounds."  Id.

Here, as the courts in Wisconsin and Texas recognized, all the facts involved in converting mph into feet per second — 5280 feet in a mile, 60 minutes in an hour, and 60 seconds in a minute — are matters of common knowledge.  Schmiedeck, 166 N.W.2d at 139; Drake, 757 S.W.2d at 911.  Similarly, the math to convert mph into feet per second is straightforward.  Because this is a matter of general knowledge, Kwong did not need to show the district court how to convert 60 mph into feet per second, and the ICA erred in concluding the district court did not have the necessary information to make judicial notice mandatory.

It appears that the district court declined to take judicial notice of this conversion.[11]  Nevertheless, the ICA

_____

[10]  The avoirdupois measurement system is the American customary system for measuring weight, in which there are 16 ounces to a pound.  An avoirdupois ounce is distinguished from a fluid ounce and other forms of measurement that also use the term "ounce."  Avoirdupois weight measurement system, Encyclopedia Britannica, https://perma.cc/V8FP-EEVY.

[11]  As the ICA recognized, it is not entirely clear that the district court refused to take judicial notice.  Nevertheless, when the transcript is
(continued . . .)

correctly concluded that any error was harmless. As discussed below, the district court was entitled to believe Officer Wong's testimony about Kwong's indicia of intoxication and her performance on the SFSTs even if the officer's estimates about the parties' speed and distance from the intersection were not credible. The court was also entitled to believe portions of Officer Wong's testimony even if other portions were not credible. See Dietz v. Consol. Oil & Gas, Inc., 643 F.2d 1088, 1094 n.2 (5th Cir. 1981) (explaining that even if the court judicially noticed facts that undermined a witness's testimony,

---

viewed in its entirety, it appears the district court did decline to do so. After Kwong's counsel asked the district court to take judicial notice that "[i]f you're going 60 miles per hour, you're going 88 feet per second," the following exchange occurred:

> THE COURT: Yeah. I -- I can't take judicial notice of that.
>
> [COUNSEL]: Why?
>
> THE COURT: You -- you want an expert, you bring an expert.
>
> [COUNSEL]: It's not an expert. It's like 12 inches in a foot. Everybody knows it. It's like the sun comes up in the morning from the east.
>
> THE COURT: Right, right.
> Keep -- continue. Continue.

Kwong's counsel then explained that, given this conversion, the events described by Officer Wong were "physically impossible." The district court responded, "Okay. What else?" Thus, it appears that the court was simply acknowledging the argument without actually adopting it.

Likewise, in ruling on Kwong's motion for judgment of acquittal, the court stated, "Physics aside at this point, I don't have any expert as far as what's going -- but that's [Officer Wong's] testimony." In context, the comment about not having "any expert" implies that the court thought expert testimony was needed to take judicial notice.

the court could not use those facts to draw the inference that the witness was not credible, since the factfinder determines credibility); see also Eastman, 81 Hawai'i at 139, 913 P.2d at 65 ("An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge."); State v. Jhun, 83 Hawai'i 472, 483, 927 P.2d 1355, 1366 (1996) ("Witnesses may be inaccurate, contradictory, and even untruthful in some portions of their testimony, and yet be entirely credible in other portions of their testimony.").

Thus, while the ICA erred in not finding the conversion from 30 mph to 44 feet per second proper for judicial notice, we hold that the error was harmless.

2. **The ICA Did Not Err in Declining to Take Judicial Notice of the Annotated Map Attached to Kwong's Opening Brief**

Generally, "[t]here is no mandatory requirement for a court of appeals to take judicial notice of any adjudicative fact, but, if it so chooses, such court may do so."[12]  29 Am. Jur. 2d Evidence § 37 (2021); see also Reina-Rodriguez v. United States, 655 F.3d 1182, 1193 (9th Cir. 2011) ("[W]e rarely take

---

[12]  As noted above, there may be an exception with respect to court records in a related proceeding.  Oahu Publications, 134 Hawai'i at 20 n.3, 332 P.3d at 163 n.3 (noting that the ICA may have been required to take judicial notice of court records involving the same parties).

25

judicial notice of facts presented for the first time on appeal[.]").  However, appellate courts have discretion to take judicial notice in the interests of justice: "Where the equity of the situation dictates, we will use our discretion to take judicial notice of matters of which courts may properly take judicial notice but which are not part of the record on appeal."  Eli v. State, 63 Haw. 474, 478, 630 P.2d 113, 116 (1981) (citing McAulton v. Smart, 54 Haw. 488, 510 P.2d 93 (1973)) (taking judicial notice of court files); see also Gao v. State, Dep't of Attorney Gen., 137 Hawai'i 450, 459 n.6, 375 P.3d 229, 238 n.6 (2016) (taking judicial notice of publicly available manual where appellant had been pro se until pro bono counsel was appointed).

That said, even if an appellate court were inclined to take judicial notice, the facts to be noticed must be "commonly known or easily verifiable."  Cf. In re Thomas H. Gentry Revocable Tr., 138 Hawai'i 158, 171 n.8, 378 P.3d 874, 887 n.8 (2016) (taking judicial notice of a warranty deed which was "a matter of public record and easily verifiable").  In Moses, for instance, this court declined to take juridical notice of the contents of letters between parties "because such communications differ from case to case" and are "subject to reasonable dispute."  102 Hawai'i at 455, 77 P.3d at 946.  We reasoned that

taking judicial notice of such case-specific adjudicative facts in a criminal appeal was inappropriate because "[t]his court cannot consider evidence outside the record[.]" Id.

Here, the ICA correctly declined to take judicial notice of Kwong's annotations on the map. Like the letters in Moses, the annotations were case-specific, not information that is "commonly known or easily verifiable." Id.

Moreover, Kwong's annotations lacked foundation because they were never established to be a fair and accurate depiction of vehicles' locations at the time Kwong changed lanes. See HRE Rule 901(a) (requiring that evidence be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims"). For example, Kwong's annotations say that Officer Wong was in the middle-left lane, which was marked as 11 feet wide, and that Kwong drove from the right lane to the left lane, which was marked at 12 feet wide. No testimony at trial established the widths of the relevant lanes; the map lacks a scale that could, under some circumstances, allow the figures to be ascertained; and Kwong has not shown where she obtained those measurements.

Kwong argues that the State's recitation of Officer Wong's testimony was a "judicial admission under H.R.E. 803(a)(1) that the vehicles [were] where Kwong placed them on

27

her Google aerial photograph[.]" We disagree. Officer Wong testified that Kwong's lane change took place within 30 feet of the intersection. There is no way to verify, on the map Kwong drew, that the vehicles were within 30 feet from the intersection. Similarly, Officer Wong testified that Kwong's abrupt lane change happened as a pickup truck started to make a left turn. Kwong drew the truck in the crosswalk, part-way through its left turn, but that may not have been accurate. Officer Wong did not state where the truck was located when Kwong changed lanes — the truck may have been in the left-turn lane still, or it may have been even farther into the intersection.

Finally, "the equity of the situation" does not warrant taking judicial notice of the map. Eli, 63 Haw. at 478, 630 P.2d at 116. Kwong was represented by counsel below; she could have introduced the map during trial and authenticated it as an accurate depiction of Kwong's lane change. Further, as previously discussed, the district court need not have credited Officer Wong's estimate of the vehicles' distances from the intersection to credit his other observations, including Kwong's indicia of intoxication and her performance on the SFSTs. Accordingly, even if the ICA had taken judicial notice of the map and annotations, it would not have changed the outcome of

28

Kwong's appeal.

In sum, we hold that Kwong's arguments that the district court and the ICA erred by refusing to take judicial notice are unavailing.

**B. The ICA Did Not Err in Declining to Question the District Court's Credibility Determinations or in Affirming the District Court's Denial of Kwong's Motion for Judgment of Acquittal**

Kwong contends that the ICA "conflat[ed] the function of the trial court in determining the facts where there is conflicting evidence with the situation where there is no conflict in the evidence." Because Officer Wong testified to something that, according to Kwong, was "contrary to the laws of physics," she seems to assert the ICA should have found him not credible.[13] We disagree.

As the ICA recognized, during a bench trial, "[i]t is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of facts; the judge may accept or reject any witness's testimony in whole or in part." State v. Monteil, 134 Hawai'i 361, 368, 341 P.3d 567, 574 (2014) (quoting Eastman, 81 Hawai'i at 139, 913 P.2d at 65). Contrary

---

[13] Kwong does not expressly say the ICA erred in declining to question the district court's credibility determinations, but she implies it: "Officer Wong, who testified for the State uncontradicted to something that is scientifically impossible because his testimony is contrary to the laws of physics, is hardly a credible witness."

to Kwong's assertion, even assuming Officer Wong's testimony about the distances and speeds of her lane change was physically impossible, the court could have believed his remaining testimony about her performance on the SFSTs. Cf. State v. Su, 147 Hawai'i 272, 285, 465 P.3d 719, 732 (2020) (holding that testimony that does not make physical sense is not necessarily probative of untruthfulness). Kwong herself admitted she had made a last-minute lane change into the far-left lane, corroborating that aspect of Officer Wong's testimony.

Thus, we hold that the ICA did not err in declining to question the district court's credibility determinations or in determining that the motion for judgment of acquittal was properly denied.

### V. CONCLUSION

For the reasons set forth in this opinion, we affirm the ICA's July 31, 2020 Judgment on Appeal.

Earle A. Partington and                         /s/ Mark E. Recktenwald
R. Patrick McPherson
for petitioner                                  /s/ Paula A. Nakayama

Brian R. Vincent                                /s/ Sabrina S. McKenna
for respondent
                                                /s/ Michael D. Wilson

                                                /s/ Bert I. Ayabe



30