**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000710
15-SEP-2022
07:58 AM
Dkt. 61 SO**

NO. CAAP-21-0000710

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF KH-V

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 18-00170)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Father-Appellant (**Father**) appeals from the Order Terminating Parental Rights, entered on December 9, 2021, by the Family Court of the First Circuit (**Family Court**). Father contends that the Family Court abused its discretion in terminating his parental rights over his child (**Child**). Specifically, Father argues that Petitioner-Appellee Department of Human Services (**DHS**) failed to provide Father with a reasonable opportunity to reunify with Child, when DHS failed to comply with the Family Court's order to start Parent Child Interactive Therapy (**PCIT**). Father also challenges findings of fact nos. 96, 98, 104, 106-109, and 115, in the Family Court's January 18, 2022 Findings of Fact and Conclusions of Law (**FOFs/COLs**).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows and affirm.

**I.**

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion."  In re Doe, 95 Hawaiʻi 183, 189, 20 P.3d 616, 622 (2001) (quoting In re Jane Doe, Born on May 22, 1976, 84 Hawaiʻi 41, 46, 928 P.2d 883, 888 (1996) (internal quotation marks omitted).

We review Father's challenges to the Family Court's FOFs for clear error.  Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

> A FOF "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made."  "'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."

Id.  (citations and ellipsis omitted).  Unchallenged findings of fact are binding on the parties and this court.  In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (citing Poe v. Hawaii Labor Relations Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002) ("Unchallenged findings are binding on appeal.")).  We likewise review conclusions of law that present mixed questions of fact and law for clear error.  See In re JM, 150 Hawaiʻi 125, 137, 497 P.3d 140, 152 (App. 2021).

**II.**

**A.   Reunification Efforts and FOFs 96 and 107-109**

"DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family" and to "make reasonable efforts to reunite parent and child."  In re Doe, 100 Hawaiʻi 335, 343, 60 P.3d 285, 293 (2002) (interpreting HRS Chapter 587, the predecessor to HRS Chapter 587A); see HRS § 587A-2 (2018) ("Every reasonable opportunity should be provided to help the child's legal custodian to succeed in remedying the problems that put the child at substantial risk of being harmed in the family home.").

Father argues that DHS did not provide him with a reasonable opportunity to reunify with Child when DHS failed to comply with the Family Court's order to start PCIT services. Father appears to assert that between July and November 2020, DHS unreasonably prioritized the resource caregiver's (**RCG**) concerns about COVID-19 transmission over DHS's own goal of reunification, which ultimately led to Father's substance abuse relapse and loss of parental rights. Apparently in connection with this argument, Father also challenges FOFs 96 and 106-109,[1] which state:

> 96. Despite some setbacks and delays due to COVID-19, the DHS made reasonable efforts to assist Father in resolving his safety issues.
>
> . . . .
>
> 106. Under the circumstances presented by the instant case, the DHS has exerted reasonable and active efforts to avoid foster placement of [Child].
>
> 107. Under the circumstances presented by the instant case, the DHS has exerted reasonable and active efforts to reunify [Child] with Father by identifying necessary, appropriate, and reasonable services to address Father's identified safety issues, and making the appropriate and timely referrals for those services.
>
> 108. Under the circumstances presented by the instant case, the DHS gave Father every reasonable opportunity to succeed in remedying the problems which subjected [Child] to substantial risk of being harmed in the family home, and to reunify with [Child]. The DHS actively encouraged Father to participate in necessary and reasonable services to allow him to reunify with [Child].
>
> 109. Each of the service plans offered by the DHS and ordered by the court were fair, appropriate, and comprehensive.

We conclude that substantial evidence supports FOFs 96 and 106-109, and we are not left with a definite and firm conviction that a mistake has been made. The record shows that until May 2021, DHS retained its goal of reunification and plan to begin PCIT despite Father's multiple relapses. DHS changed course only after Father repeatedly failed to appear for random urinalyses (**UAs**) in 2021 and then reported relapsing again, on May 5, 2021. Further, there is no evidence that DHS moved to terminate Father's parental rights based on the delay in starting

---

[1] These FOFs appear to be mixed determinations of fact and law.

PCIT. In fact, DHS social worker Michael Tovey (**Tovey**) reported that DHS's inability to begin PCIT could not be held against Father; DHS social worker Shane Uyeda (**Uyeda**) testified at trial that Father was on a waiting list for PCIT when he relapsed in May 2021; and the primary basis for the motion to terminate parental rights (**TPR Motion**) was Father's substance abuse issues.

At trial, Tovey testified that Father had demonstrated a pattern of relapsing when experiencing stress and had admitted to relapsing at various times throughout the child protective proceeding. Father also had avoided random drug testing. DHS's February 3, 2021 Family Service Plan indicates that Father avoided random UAs between May and October 2020, tested positive for methamphetamine on December 30, 2020, then refused to engage in random UAs. In a May 24, 2021 report, Uyeda stated that Father failed to appear for random UAs on April 13, 2021, April 27, 2021, and April 30, 2021. DHS's goal had been reunification up until May 2021, when Father admitted to relapsing again. The Guardian Ad Litem's February 11, 2021 report states, "I understand that COVID issues have somewhat stalled reunification given the RCG's concerns, but now Father's failure to participate in UAs is further delaying his progress."

DHS's TPR Motion specifically cites Father's inability "to demonstrate healthy coping skills in utilizing his network of supports to prevent relapsing as [F]ather has a pattern of using illegal substances when life becomes difficult[,]" which called into question his ability to demonstrate and sustain long-term sobriety.

FOFs 78-84 and 87-88, which are unchallenged on appeal and thus binding on the parties and this court (see supra), state:

> 78. Father informed the DHS that he was doing urinalyses with his probation officer, but on October 13, 2020, his probation officer told the DHS social worker that he had not done a drug test in months.
>
> 79. A no-show for a drug test is presumed to be positive.
>
> 80. Father no-showed for a drug test on October 29, 2020.

81. The DHS offered a drug test to Father on October 30, 2020, but Father reported possible COVID-19 exposure and that his doctor told him to stay home.

82. A November 3, 2020 urinalysis was positive for marijuana, but Father suddenly produced a medical marijuana card, of which neither the DHS, nor his probation officer had prior knowledge.

83. The DHS submitted a new referral to Hina Mauka for an updated substance abuse assessment and random urinalysis. Father's original appointment was November 23, 2020, but he rescheduled it for December 4, 2020 because he reportedly had to care for his girlfriend's son, and then again to December 22, 2020, with no explanation given.

84. Father's urinalysis on December 22, 2020 was negative, but his urinalysis on December 30, 2020 was positive for methamphetamine. On December 31, 2020, Father left the DHS social worker a voicemail admitting to a relapse on December 27, 2020. Father no-showed for a urinalysis on January 6, 2021.

. . . .

87. Father still missed urinalyses at Hoʻomau Ke Ola on April 13, 27, and 30[,] 2021[,] and May 5, 2021.

88. Father contacted the DHS on May 5, 2021, and . . . admitted to relapsing.

Moreover, uncontested FOF 95, which is also binding, provides in relevant part, "Even taking into consideration some setbacks and delays due to COVID-19, Father had ample time to resolve all of his safety issues but he was unable to, in particular, demonstrate that he could maintain sobriety over time[.]"

Father also argues that DHS should not have taken into account his relapse[2] when considering whether to move for TPR, because it was caused in part by DHS's failure to start PCIT between July and November 2020. However, Father cites no evidence in the record supporting his factual assertion and no authority supporting his argument. We have found none.

On this record, we conclude that FOFs 96 and 106-109 are not clearly erroneous, and Father's argument that DHS failed to afford him a reasonable opportunity to reunify with Child is without merit.

---

[2] Father does not identify the date of the relapse to which he refers.

## B.   Tovey's Testimony and FOF 115

Father argues:

> [DHS] was clearly in favor of transitioning [Child] to [Father] in the Safe Family Home Report dated July 7, 2020[3] and Short Report dated November 24, 2020 [**(11/24/20 Report)**]. . . . Knowing of [Father]'s relapses [DHS] wanted to reunify [Child] with [Father] but for [RCG] stopping reunification by her fear of covid [sic]. . . . Tovey's testimony under oath is inconsistent with his two reports. [] Tovey's depiction of his reports as reflecting the perennial goal of reunification is not credible.

Apparently in connection with this argument, Father also challenges FOF 115, which states:

> 115. The DHS social workers . . . Tovey and . . . Uyeda testified on behalf of the DHS, and their testimony regarding their investigations, efforts, and assessments were credible.

Tovey's testimony does not contradict his statements in his 7/9/20 Report and 11/24/20 Report.  In both his testimony and his reports, Tovey explained that progress toward DHS's goal of reunification had been hindered by the delay in implementing in-person visits, caused by COVID-19.  Regardless, "[i]t is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part." State v. Kwong, 149 Hawaiʻi 106, 112, 482 P.3d 1067, 1073 (2021) (quoting State v. Eastman, 81 Hawaiʻi 131, 129, 913 P.2d 57, 65 (1996)). FOF 115 is not clearly erroneous.

## C.   Remaining FOFs

Father challenges FOFs 98 and 104[4] but does not provide

---

[3]    There does not appear to be a July 7, 2020 safe family home report; however, in a July 9, 2020 report (**7/9/20 Report**), Tovey stated that the permanency plan was reunification by October 2020 but COVID-19 had delayed the reunification process, including starting PCIT, which was beyond Father's control and could not be counted against him.

[4]    FOFs 98 and 104 state:

> 98.   Because of his repeated participation in various drug treatment programs and relapses, at the time of trial, it was not reasonably foreseeable that Father would be able to maintain sobriety over a prolonged period of time.

any argument as to why either FOF (or mixed FOF/COL) was clearly erroneous.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7).  His challenge to these FOFs is therefore without merit.

**III.**

For the reasons discussed above, we conclude that the Family Court did not abuse its discretion in entering the Order Terminating Parental Rights.  The order is therefore affirmed.

DATED:  Honolulu, Hawaiʻi, September 15, 2022.

On the briefs:

Herbert Y. Hamada
for Father-Appellant.

Gay M. Tanaka and
Julio C. Herrera,
Deputy Attorneys General, for
Petitioner-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

---

104.  The DHS made reasonable efforts to accommodate Father's Hawaiian cultural practices by making special arrangements for him to do urinalysis at Hoʻomau Ke Ola, and accepting drug treatment reports from Hoʻomau Ke Ola, which specifically incorporates Hawaiian cultural practices into its drug treatment programs.